[Crim. No. 5506. Second Dist., Div. One. Apr. 9, 1956.]

THE PEOPLE, Respondent, v. THOMAS C. JOHNSON, Appellant.

E. V. Cavanaugh for Appellant.

Edmund G. Brown, Attorney General, and William E. James, Deputy Attorney General, for Respondent.

WHITE, P. J.—In an information filed by the district attorney of Los Angeles County, defendant was accused of the crime of murder. It was further alleged that he had previously been convicted in the District Court of Grady County, Oklahoma, of the crime of assault with intent to kill, a felony, for which he served a term of imprisonment in the state prison.

Defendant entered a plea of not guilty and denied the prior conviction. Thereafter, and with his counsel present, defendant withdrew his plea of not guilty and entered his plea of guilty to the crime of manslaughter, a felony and a lesser and necessarily included offense. He also thereupon admitted the prior conviction. Defendant was sentenced to state prison and judgment entered accordingly. From such judgment he prosecutes this appeal.

The record reveals that at the time defendant withdrew his not guilty plea and entered his plea of guilty to the lesser offense of manslaughter, the following proceedings occurred:

"THE COURT: Thomas C. Johnson.

"MR. CRAIL [Deputy District Attorney]: In this case, if the Court please, the defendant has indicated his willingness to enter a plea of guilty to manslaughter, a lesser and necessarily included offense.

"THE COURT: I notice you are the attorney of record in this matter, Mr. Werner. Have you advised the defendant of his responsibility, his rights and liabilities, and so forth?

"MR. WERNER: I have, your Honor. I also want to state I did so several weeks ago, and the defendant here seemed to be a little disturbed about my recommendation and at-

tempted to employ other counsel. Realizing my obligation to the Court, I have returned here, but I do recommend that he change his plea and admit the prior. Is that correct?

"Mr. Crail: Yes.

"The Court: Now, Mr. Johnson, do you want to plead guilty to the crime of manslaughter?

"The Defendant: Yes, your Honor.

"The Court: I beg your pardon?

"The Defendant: Yes, your Honor.

"The Court: Are you satisfied with the advice that Mr. Werner has given you?

"The Defendant: I am.

"The Court: There is no disagreement between you and Mr. Werner?

"The Defendant: No, sir.

"Mr. Werner: And I want him to understand I have no supervision or control over the punishment. That came up in the argument, your Honor.

"The Court: You understand, Mr. Johnson, that if you enter this plea of guilty to manslaughter, you are doing that freely and voluntarily, because you believe you are guilty of that offense; is that right?

"The Defendant: Yes.

"The Court: Has anybody forced you or persuaded you to plead guilty to this charge?

"The Defendant: No, sir; your Honor.

"The Court: I didn't hear you.

"The Defendant: No, your Honor.

"The Court: Has anybody given you any promise of reward or hope of leniency for pleading guilty?

"The Defendant: Oh, no.

"The Court: You understand nobody is authorized to promise what your sentence will be?

"The Defendant: No."

Defendant thereupon entered his plea of guilty to the crime of manslaughter and admitted the prior conviction as charged. The following proceedings then occurred:

"Mr. Werner [attorney for defendant]: May we file an application for probation?

"The Court: What was the means employed in the killing?

"Mr. Werner: A knife, your Honor.

"The Court: The defendant is not eligible for probation."

Time for sentence was fixed for June 29, 1955, upon which date it was pronounced.

The sole issue presented on this appeal is the contention of appellant that the trial court erred and abused its discretion in concluding that he was not eligible for probation and on that ground alone, denying him the right to file an application for probation.

Section 1203 of the Penal Code provides, as to eligibility for probation, that "probation shall not be granted to any defendant . . . who used or attempted to use a deadly weapon upon a human being in connection with the perpetration of the crime of which he was convicted . . ."

■ A knife is not inherently a dangerous or deadly weapon as a matter of law though it may assume such characteristics, depending upon the manner in which it is used (*People* v. *McCoy*, 25 Cal.2d 177, 188 [153 P.2d 315]), and in *People* v. *Southack*, 39 Cal.2d 578, 591 [248 P.2d 12], our Supreme Court stated, "The fact that the fatal wound was inflicted by a deadly weapon does not compel the conclusion, as a matter of law, that defendant was 'using' the weapon and was therefore ineligible for probation." In the case just cited defendant was accused of the crime of murder and a jury found him guilty of manslaughter. The weapon used was a 12-gauge shotgun with a "hair trigger." The trial court concluded that defendant was not eligible for probation. In commenting upon the evidentiary features of the case, the Supreme Court stated at p. 591: "As previously indicated (*ante,* pp. 583, 584 [39 Cal.2d]) there is evidence from which it could be inferred that defendant 'used or attempted to use' the loaded gun upon Ellsworth, and there is also evidence from which it could be inferred that defendant, as he himself testified, 'did not use the gun,' but merely held it without due caution. . . .

"Remarks of the trial court at the time it was considering defendant's application for probation indicate that it was of the opinion that the jury must have convicted defendant of voluntary manslaughter and that it overlooked the possibility that, under the evidence and the instructions, defendant could have been convicted of involuntary manslaughter. If defendant's crime was voluntary manslaughter, then the trial court was correct in its stated conclusion that 'there is nothing further the court can do but send this man to the penitentiary.' But, since the court could have resolved in defendant's favor, the question of fact as to whether the manslaughter involved

the use of the weapon upon Ellsworth and, hence, could have considered and, conceivably, granted his application for probation on the merits, it was error to refuse to consider the application at all.''

In the case at bar we are confronted with a situation wherein the court made no finding as to whether the charge to which appellant pleaded guilty was voluntary or involuntary manslaughter. Indeed, the court could make no such finding because the facts surrounding the homicide were not presented. The court was not apprised of the surrounding facts and circumstances of the offense and was without knowledge as to whether appellant ''used'' the knife upon the deceased, or, as in the case of *People* v. *Southack, supra,* p. 591 ''merely held it without due caution.'' We are satisfied that the reasoning and conclusion reached in the case of *People* v. *Southack, supra,* compels the conclusion in the case now engaging our attention, that it was error for the trial court to refuse to permit the filing of or to consider an application for probation at all. Since an application for probation must be considered ''before any judgment is pronounced'' (Pen. Code, § 1203), the judgment herein must be reversed.

For the foregoing reasons the judgment is reversed and the cause remanded for further proceedings in accordance with the law, and with specific directions to the court below to entertain an application for probation and to determine, in accordance with the views herein expressed, whether appellant used the knife upon the deceased; if it determines that appellant did use the knife upon the victim, the application must be denied; if it determines that appellant did not use the knife upon the deceased, then it may grant or deny probation as may appear proper under all the circumstances.

Doran, J., and Fourt, J., concurred.