[No. B048684. Second Dist., Div. Six. Mar. 12, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
SCHERRI CHARISSA NEALY, Defendant and Appellant.

**COUNSEL**

Lauri K. Brown, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Edward T. Fogel, Jr., Assistant Attorney General, William T. Harter and David A. Warshaw, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**YEGAN, J.**—Scherri Charissa Nealy appeals from the judgment (order granting probation) entered following a court trial resulting in her conviction of possessing cocaine base for sale. (Health & Saf. Code, § 11351.5.) Prior thereto, she unsuccessfully brought a motion to suppress evidence. (Pen. Code, § 1538.5.) She contends: "I. The trial court erred in refusing to suppress evidence for a violation of the knock and announce procedures. II. The content of the incoming phone calls is inadmissible evidence in that it is relevant only to prove the implied hearsay itself."

Viewed in accordance with the time-honored standard of appellate review (See e.g., *People* v. *Williams* (1988) 45 Cal.3d 1268, 1301 [248 Cal.Rptr. 834, 756 P.2d 221] [suppression motion]; *People* v. *Hayes* (1990) 52 Cal.3d 577, 631 [276 Cal.Rptr. 874, 802 P.2d 376]; *People* v. *Jackson* (1989) 49 Cal.3d 1170, 1190-1200 [264 Cal.Rptr. 852, 783 P.2d 211] [trial]), the evidence established that at approximately 6:10 p.m. on August 15, 1989, Oxnard Police Officer Robert Coughlin, accompanied by eight other officers, executed a search warrant at an apartment at 410 East Pleasant Valley Road in Ventura County.

Coughlin knocked loudly on the door of the apartment six or seven times. He yelled in a very loud voice, "Police Officers." He waited, knocked again, and then once again yelled, "Police Officers." When no one answered the door or replied, the officers forcibly entered. Coughlin explained that between 20 to 30 seconds transpired between the initial knock and entry. Before entering the apartment, Coughlin observed one of the two cars described in the search warrant parked in front of the apartment building. This led him to believe that someone was in the apartment.

After entering, Coughlin saw a woman, later identified as Schwanequa Nealy, in the front room about 10 feet from the door. Appellant and the cocaine base were found in the bedroom.

Schwanequa Nealy testified that she was with appellant in the bedroom when she heard pounding on the door. She started to answer the door, but was only halfway across the front room when the officers entered. Only a "short period of time" elapsed between the knocking and the entry. Schwanequa estimated the lapse was between 15 and 20 seconds.

In denying the motion to suppress, the court indicated there was no real factual dispute in the evidence and the pause between knock and the entry was somewhere between 15 and 30 seconds. It stated that the apartment was small, the officers had reason to believe it was occupied, and they waited a reasonable amount of time before forcibly entering.

At the court trial, Officer Ronald Whitney testified that he saw appellant in the bedroom and seized 10 to 15 cocaine rocks in a baggie which was in a hanging plant next to the bed. He also seized documents identifying appellant as the apartment's occupant, $193.88 in cash, and appellant's driver's license from her purse next to the bed. Four cocaine pipes and a beeper were also seized. Whitney indicated that the amount and size of the cocaine rocks, the presence of four pipes, and the beeper, led him to opine that the cocaine was possessed for the purpose of sale.

During the course of the search warrant's execution, Officer Gary Lumas answered the telephone. Over appellant's objection that the content of the conversation was hearsay, Lumas testified that the caller asked for appellant by her first name and inquired about purchasing a "dove." Lumas, who was experienced in the nomenclature used during cocaine sales, indicated that a "dove" was a "$20 piece of rock cocaine." Over appellant's hearsay objection, Lumas also testified that he returned two telephone calls to numbers recorded on the beeper. Both people asked for appellant by her first name and wanted a "dove."

■ Appellant's first contention is without merit. Substantial evidence supports the trial court's determinations that the officers had ". . . been refused admittance or . . . [there had] been an unreasonable delay by the parties within in responding to the demand. [Fn. omitted.]" (*People* v. *Peterson* (1973) 9 Cal.3d 717, 723 [108 Cal.Rptr. 835, 511 P.2d 1187]; see also *People* v. *Gallo* (1981) 127 Cal.App.3d 828, 838 [179 Cal.Rptr. 662]; *People* v. *Elder* (1976) 63 Cal.App.3d 731, 739 [134 Cal.Rptr. 212].)

■ The contention that the three telephone requests for the purchase of "doves" were inadmissible is also without merit. The trial court expressly indicated that the three requests were not being considered for the truth of the matters asserted. The very words uttered demonstrate the wisdom of the trial court's analysis. The People's theory was not that appellant was a member of the Audobon Society, an ornithologist, or in the bird-selling business. These requests to purchase "doves" were not hearsay. (*People* v. *Jackson, supra,* 49 Cal.3d 1170, 1187; *People* v. *Green* (1980) 27 Cal.3d 1, 23-24, fn. 9 [164 Cal.Rptr. 1, 609 P.2d 468].)

With scalpel precision the trial court expressly determined that these three requests were relevant and admissible as circumstantial evidence which had a tendency in reason to show only that the cocaine actually seized was possessed for the purpose of sale, and not for any other purpose. In essence, the trial court edited the content of the three telephone calls down to the naked requests themselves. (See *People* v. *Guizar* (1986) 180 Cal.App.3d 487, 491-492 [225 Cal.Rptr. 451].) ■ " 'Circumstantial evidence is that which is applied to the principal fact, indirectly, or through the medium of other facts, from which the principal fact is inferred. The characteristics of circumstantial evidence, as distinguished from that which is direct, are, first, the existence and presentation of one or more evidentiary facts; and second, a process of inference, by which these facts are so connected with the facts sought, as to tend to produce a persuasion of its truth.' " (*People* v. *Crawford* (1967) 253 Cal.App.2d 524, 529-530 [61 Cal.Rptr. 472]; *People* v. *Goldstein* (1956) 139 Cal.App.2d 146, 152 [293 P.2d 495].) ■ Here, the "principal fact" is that the rock cocaine actually seized was possessed for the purpose of sale. The process of inference is as follows: During the time of the search warrant's execution, three people believed that $20 quantities of rock cocaine could be purchased from someone at the subject apartment. From these three beliefs, a reasonable person might draw the inference and logically and reasonably deduce from these circumstances that the "principal fact," possession of cocaine for sale, has been shown. (See Evid. Code, § 600, subd. (b).) Phrased otherwise, these circumstances " 'tend to produce a persuasion of . . . truth.' " (*People* v. *Crawford, supra,* 253 Cal.App.2d at p. 530; *People* v. *Goldstein, supra,* 139 Cal.App.2d at p. 152.)

The trial court's analogy to the "bookmaking cases" is apposite. The California Supreme Court has given its imprimatur to the admissibility of telephone calls to a suspected "bookmaker," not for the truth of the matters asserted therein, but as circumstantial evidence to show ". . . the use to which the telephone was used." (*People* v. *Fischer* (1957) 49 Cal.2d 442, 447 [317 P.2d 967]; see also *People* v. *Warner* (1969) 270 Cal.App.2d 900, 907 [76 Cal.Rptr. 160] [telephone conversations to show the purpose for which the premises are used]; 1 Witkin, Cal. Evidence (3d ed. 1986) § 604, p. 577.) Just as the Supreme Court observed in *People* v. *Fischer, supra*, 49 Cal.2d at page 447 that ". . . in the case of a bookmaker the telephone is usually an indispensable facility for the extension and safe operation of his business," the same observation can be made of a controlled substance peddler. In fact, the trial court also relied on *People* v. *Hale* (1968) 262 Cal.App.2d 780, 788 [69 Cal.Rptr. 28], where the appellate court stated that such telephone conversations ". . . circumstantially establish the Hale premises as a place from which marijuana in commercial quantities, to wit, 'key,' 'kilogram,' or '2.2 pound' units, was being sold, furnished, or distributed. [Citations omitted.]"

Nothing in *People* v. *Scalzi* (1981) 126 Cal.App.3d 901 [179 Cal.Rptr. 61] compels a contrary determination. There, the theory of admissibility was not well articulated. The appellate court saw the issue as relating to ". . . declarant's statement relating facts other than his state of mind but offered to prove declarant's state of mind by inference. [Citation omitted.]" (*Ibid.*, at p. 905.) The trial court saw the issue as relating ". . . only to furnish information to the witness as to what he did later." (*Ibid.*) The Attorney General saw the issue as relating to why the officer " '. . . booked appellant on those particular charges . . . .' " (*Id.*, at p. 906.) ▮ "Cases are not authority for questions not presented or considered. [Citation.]" (*People* v. *Warburton* (1970) 7 Cal.App.3d 815, 822 [86 Cal.Rptr. 894].) Since *People* v. *Scalzi, supra*, did not discuss a well-articulated and lawful theory of admissibility, it is not here controlling. To the extent that it expressly or impliedly holds that a telephone request for the purchase of a controlled substance is not admissible circumstantial evidence on the issue of the purpose for which seized contraband is possessed, we decline to follow it.

▮ From these authorities we distill the following rule: subject to Evidence Code section 352, and appropriate editing, when a police officer participates in a telephone conversation where he is lawfully executing a search warrant and hears a third person offer to purchase a controlled substance, testimony thereon is not made inadmissible by the hearsay rule and may be received as circumstantial evidence tending to show the controlled substance seized at that location was possessed for purposes of sale.

The order denying suppression and the judgment (order granting probation) are affirmed.

Stone (S. J.), P. J., and Gilbert, J., concurred.

A petition for a rehearing was denied March 28, 1991, and appellant's petition for review by the Supreme Court was denied June 19, 1991.